### THE GUY G. MAJOR.

### (District Court, E. D. New York. May 13, 1903.)

1. COLLISION—VESSEL AT PIER—LIGHTER CAUSING BARGE TO SWING AT MOORINGS.

A steam lighter which cast off some of the lines by which a barge was moored at the end of a pier in order to go between the barge and the pier for the purpose of discharging, allowing the barge to swing with the tide, assumed the responsibility of guarding her movements to prevent her from injuring other vessels, and is solely liable for an injury to another vessel lying at the side of the pier with which the barge came in collision, in the absence of evidence showing that the barge was also in fault.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham (Forrester, of counsel), for libelant.
Peter S. Carter, for the barge.
Howland, Murray & Prentice (Lancaster, of counsel), for steam lighter.

THOMAS, District Judge. The bark Powelson was lying on the north side of pier 12, East river, and the barge B. & F. No. 8, loaded with dirt, was lying at the end of such pier. The tide was at the last of the ebb. The steam lighter Guy G. Major desired to discharge cargo at the end of the pier, and obtained permission of the master of the barge to go between her and the dock for that purpose, upon the promise of returning the same to the dock, and thereupon did enter with the bow upstream and projecting some feet northerly of the pier. The barge had been made fast to the pier by a stern line running to the southeasterly corner of the pier. When the Major came in the barge's bowline was made fast to the stern bitts of the Major. While the Major was discharging the tide changed to a moderately strong flood, and when the tug was ready to go out the master of the barge came forward and drew in his bowline, which was thrown off on the tug; whereupon the barge began to swing, and had reached a point so that she was at right angles to the pier when the Major had backed out. In backing out the Major was obliged to throw her stern to starboard, as there were vessels at the pier below. This carried the stern of the Major up the river, and it was her intention to go on the upper side of the barge, make a line fast between the tug and the barge's side, and push the barge up against the dock. Before this was done, however, the barge had been carried by the tide into the slip north of Pier 12, so that her corner came in contact with the bark lying there, and did the damage for which the libel is filed. The Major contends that afterwards she set the barge back at the dock, but the master of the barge states that the Major went away, and did nothing whatever. The Major contends that, after the line was thrown off from the barge to the tug, the master of the barge went astern, and although he was hailed and asked to return and make fast a line from the tug to the barge, so that the latter could push the former up against the pier, he not only refused to return, but used very indecent language to those on the tug. The master of the barge states that when the Major went out she pulled his barge in such a way as to break his breastline, leaving him but one line. Those on the tug claim that this breastline did not part at the time, but was cut against the rudder of the bark. The master of the barge states that as his breastline was broken, and his sternline had been slackened for the purpose of letting the Major in, his place was at his breastline or sternline, and that he did not know that he was called to aid the tug in the matter of adjusting the rope. The fact is that the tug let this scow go about until she was at right angles with the pier before the tug was in a position to go around on the upper side of her, and even then she did not push against her, for fear, as he said, that it would cause the scow to go still more quickly into the bark. It was at some risk that the Major left the barge to the influence of the flood tide, taking the chance of getting around on the upper side of her and making a line fast in time to prevent her from going into the bark. There is no doubt that it could have been done if there had been somebody all ready to take the line. But either the master of the scow did not, or did not want to, understand what was wanted of him. The tug

assumed the duty and risk of detaching the barge's bow mooring line, thereby exposing her to a flood tide, and upon the tug rested the responsibility of guarding her movements lest she injure other vessels. The tug failed in this duty, and is primarily liable. But should the tug be permitted to shift the liability to the barge because of the failure of the master of the barge to co-operate in the tug's intended maneuver? The careful argument of the claimant's advocate is quite logical, provided the premises be accepted that an arrangement was perfected between the tug and the master of the barge with reference to the part that the master should take in the maneuver. The question is not free from very serious doubt. The master of the barge testified that he did not understand that he was summoned to co-operate in adjusting the line at his bow. As the barge swung out her breastline was broken, and this probably disturbed and distracted the attention of the barge's master. The burden seems to be upon the tug to establish that the master of the barge was in fault, and, after careful consideration, it is concluded that the evidence does not show with sufficient clearness that the captain of the tug brought home to the master of the barge the duty which the latter was to perform to insure the safety of the maneuver. The tug backed out, allowed the barge to swing about, and to be carried by the flood tide against the libelant's vessel, her breastline meantime breaking, and the evidence does not show that the tug did anything to arrest the movement of the barge until after the collision. If the answer be that there was not time to do it, such reply indicates the dangerous opportunity that was given by the tug to the barge to do harm.

The decree should proceed against the Guy G. Major alone.